Sharon K. NELSON, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY, Defendant–Appellee.

No. 99–4043.

United States Court of Appeals, Sixth Circuit.

Jan. 17, 2001.

Before KEITH, BOGGS, and COLE, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Plaintiff–Appellant Sharon Nelson appeals the district court's grant of summary judgment in favor of Defendant–Appellee General Electric Company ("GE") and dismissing her lawsuit in which she alleged failure to promote, race and gender discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and Ohio Rev.Code § 4112 *et seq.* Nelson asserts that the district court erred in (1) dismissing her failure-to-promote claims as either time-barred or for failure to exhaust administrative remedies; (2) dismissing her discriminatory lay-off claim on the ground that she failed to establish a prima facie case and, in any event, offered no evidence of pretext; and (3) dismissing her retaliation claim on the ground that she was not subject to an adverse employment action and any protected activity in which she engaged was not causally connected to her ultimate layoff. For the reasons that follow, we AFFIRM the decision of the district court.

## BACKGROUND

Nelson is a black female who was hired to work as an Order Processing Clerk in GE's Ravenna, Ohio, facility in 1967. By 1989, Nelson was working as an Operations Specialist, managing the hourly workforce and performing various administrative functions.

In 1994, GE developed a reorganization plan that involved the elimination of Ravenna's trucking division and an overall reduction in force ("RIF") that included the reduction of both hourly and salaried workers. At the time, GE Ravenna had three Operations Specialists: Nelson; Jeff McKinney, a white male; and Mike Vasilko, a white male. McKinney's position was the first to be eliminated in the RIF. In January 1995, GE Ravenna announced that ten hourly and three salaried positions additionally would be eliminated. It then was determined that Vasilko would be let go, despite the fact that he had twelve more years of experience than Nelson. In July 1995, GE told Nelson that her position was going to be eliminated and offered her a first shift Operations Specialist position in Cleveland. Nelson received written confirmation of the offer a week later, and on August 5, 1995, she declined the offer. On September 22, 1995, Nelson was laid off.

On April 29, 1996, Nelson filed a charge of discrimination with the EEOC and the Ohio Civil Rights Commission ("OCRC"), and on May 17, 1997, after receiving her right to sue letter, Nelson filed this action in federal court.

## DISCUSSION

### I. Standard of Review

We review a district court's decision to grant a motion for summary judgment de novo. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). Summary judgment is appropriate when there exists "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Failure to Promote

#### A. Title VII

The administrative filing requirement that a Title VII plaintiff exhaust her

administrative remedies, while not jurisdictional, is a necessary prerequisite to filing a discrimination suit in federal court. *See Haithcock v. Frank,* 958 F.2d 671, 675 (6th Cir.1992) ("A person who claims to have been discriminated against in violation of Title VII may not seek relief in federal court unless administrative remedies have first been exhausted."); *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1486–87 (6th Cir.1989) (same); *Parsons v. Yellow Freight System, Inc.,* 741 F.2d 871, 873 (6th Cir.1984) ("The requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, the preferred means for resolving employment discrimination disputes.") (internal quotation marks omitted).

■ In *Haithcock,* we recognized that in determining whether a plaintiff properly raised charges at the administrative level so as to permit subsequent federal court jurisdiction, courts should construe the administrative complaint liberally so as "to encompass all charges reasonably expected to grow out of the charge of discrimination." *Haithcock,* 958 F.2d at 675 (internal quotation marks and citations omitted). "[C]harges of discrimination, which are filed by lay complainants, should not 're-sult in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Id.* (quoting *EEOC v. McCall Printing Corp.,* 633 F.2d 1232, 1235 (6th Cir.1980)).

Here, Nelson's charge of discrimination filed with the EEOC and OCRC did not allege any incidents of unlawful failure to promote; Nelson alleged only that she was given a poor performance evaluation and was laid off because of her race and gen-

der, and in retaliation for complaining to her manager about an incident of what she considered to be race discrimination. Moreover, Nelson expressly confined her charge of discrimination to the time period between March 30, 1995, and September 22, 1995, and did not mark the continuing violation box on the form. Before the district court, however, Nelson alleged three incidents of unlawful failure to promote, all of which fell outside the time period Nelson marked on her charge of discrimination. Nelson alleged that: (1) in November 1993, she was not given the opportunity to transfer from her second shift position to a first shift position as Operations Specialist and that, instead, a younger, less experienced person was chosen for the position; (2) in June 1994, she again was overlooked for the same position when a lateral transfer employee with less experience was given the job; and (3) in March 1995, John Hartney, a white male, was transferred from Chicago to become a Distribution Process Leader ("DPL") and was later promoted to Distribution Process Specialist ("DPS"); Nelson claims to have been overlooked for the DPL position because of her race and gender and that she did not apply for the DPS position because she received no notice of its opening.

■ Citing *Haithcock* and *Yellow Freight,* the district court properly concluded that Nelson failed to exhaust her administrative remedies with regard to her three failure-to-promote claims, expressly finding that "the scope of the investigation reasonably expected to grow out of her EEOC charge would not include her promotion claims." Even liberally construed, Nelson's charge of discrimination filed with the OCRC and the EEOC was insufficient to meet the administrative filing requirement necessary to pursue her Title VII claim. Accordingly, we hold that the district court did not err in dismissing

Nelson's failure-to-promote claims on grounds that Nelson failed to exhaust her administrative remedies in connection with those claims.

### B. 42 U.S.C. § 1981

■ Nelson alleges that the three above-referenced incidents of GE's failure to promote her, occurring in November 1993, June 1994, and March 1995, violated 42 U.S.C. § 1981. In an action brought pursuant to 42 U.S.C. § 1981, federal courts are to apply the state personal injury statute of limitations. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Boatright v. American Academy of Actuaries,* 208 F.3d 212, 2000 WL 303020, *2 (6th Cir.2000) (unpublished). The statute of limitations for personal injury claims in Ohio is two years. *See* Ohio Rev.Code § 2305.10; *Gates v. Precision Post Co.,* 74 Ohio St.3d 439, 659 N.E.2d 1241 (1996).

Because Nelson did not file suit until May 17, 1997, there is no question that all three incidents fall outside the applicable statute of limitations. Nelson does not argue that any of the incidents constitute a continuing violation; rather, she maintains that "John Hartney's hiring on March 15, 1995, was within the two year statute of limitations of ORC Section 2305.10 and constitutes one forbidden discriminatory act within the relevant limitation period as evidence...." Nelson simply is wrong. Because she failed to file suit by March 15, 1997, she is barred by the statute of limitations.

### C. Ohio Rev.Code § 4112.99

Finally, Nelson asserts race and sex discrimination claims pursuant to Ohio Rev. Code §§ 4112.02, 4112.99 based on GE's failure to promote. The district court dismissed Nelson's state claims based on § 4112.99's two-year statute of limitations. However, the Ohio Supreme Court since has ruled that House Bill 350 is unconstitutional, thereby causing § 4112.99 statute of limitations to revert to six years.[1] Nevertheless, the court went on to find that even had Nelson brought her claim in time, it nevertheless would fail based on the undisputed evidence that one of the alleged "promotions" was simply a shift change with a decrease in pay, and the other alleged "promotion" would have resulted in a demotion from a "Professional Band" position to an "Associate Professional Band" position.

■ On appeal, Nelson argues only that she "has evidenced a genuine issue as to material fact in dispute that she should have been appointed to the position received by John Hartney on March 15, 1995 ." We find, however, that she has not. Nelson testified that there was in fact a job listing posted for the position in question but that she did not apply for it because she did not see the posting, Nelson fails to explain how or why GE could have appointed her to a position for which she never applied, nor does she assert that GE unlawfully withheld from her any pertinent information concerning the position. Nelson's failure to apply for a job that was posted, without any evidence of wrongdoing on the part of GE, simply cannot sus-

---

1. House Bill 350 amended, enacted, or repealed over one hundred sections of the Ohio Revised Code "relative to changes in the laws pertaining to tort and other civil actions." including changes in discrimination claims brought under Ohio Rev.Code § 4112.99. Am. Sub .H.B. No. 350, 146 Ohio Laws. Part II,

3867, 3867. In *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999), the Supreme Court of Ohio declared House Bill 350 unconstitutional in its entirety because it violated the one-subject provision of Section 15(D), Article II of the Ohio Constitution.

tain a failure-to-promote claim as a matter of law.

### III. Discriminatory Layoff

■ Nelson brought both state and federal race and sex discrimination claims resulting from her layoff from GE. Under the framework for deciding Title VII employment discrimination cases set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff establishes a prima facie case of discrimination by producing evidence sufficient to prove (1) that she is a member of a protected class; (2) that an adverse employment action was taken against her; (3) that she was qualified for the position; and (4) that a comparable non-protected person was treated better. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992).[2] The standard fourth factor, however, is not appropriate in RIF cases where the most common legitimate reason for the termination is the RIF itself. *See Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990). In RIF cases, the fourth factor of the prima facie burden requires "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *See id.*

■ Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir.1996) (citing *McDonnell Douglas,* 411 U.S. at 802). The plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but were merely

pretexts for illegal discrimination. *See id.* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). To raise a genuine issue of material fact on the pretext issue and thus defeat a motion for summary judgment, the plaintiff must show that one of three factors is present: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that the proffered reasons were insufficient to motivate the action. *See Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994) (citation omitted). Using the first or third method of rebuttal, if the plaintiff can show that "the defendant's proffered reasons either have no basis in fact or are insufficient to motivate discharge, a permissive inference of discrimination arises." *See Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 346 (6th Cir.1997). Using the second method of rebuttal, the plaintiff "may not simply rely upon his prima facie evidence but must, instead, introduce additional evidence of ... discrimination." *See Manzer,* 29 F.3d at 1084 (applying standard to age discrimination case). "At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that illegal discrimination took place." *Kocsis,* 97 F.3d at 883 (citing *Burdine,* 450 U.S. at 253).

■ Here, the district court properly held that Nelson failed to establish a prima facie case of either sex or race discrimination. Of the three Operation Specialists at GE Ravenna, she was the only female and the last to be let go as a result of the RIF. Moreover, in support of her race discrimination claim, she complains that GE improperly retained three white co-workers

---

**2.** The *McDonnell Douglas* evidentiary framework is applicable not only to claims brought under Title VII, but also to claims of discrimi-

nation under Ohio state law. *See Mitchell,* 964 F.2d at 582 (citing *In re Brantley,* 34 Ohio App.3d 320, 518 N.E.2d 602 (1987)).

with less experience. Nelson claims that these three employees-Lou Ann Rogers, John Hartney, and Lynda Splittorf-had less experience at GE but did not lose their jobs. The district court properly determined that because Nelson presented no evidence showing that she was situated similarly to these employees, the fact that these co-workers were white was not "additional direct, circumstantial, or statistical evidence tending to indicate" that Nelson was singled out for impermissible purposes. Furthermore, the fact that two of those employees were women serves to discredit her claims of sex discrimination. Because Nelson presented no evidence whatsoever that she was singled out and eliminated because of her gender, her sex discrimination claims must fail.

Nelson also presents as evidence of race discrimination the fact that Michel Heroux, a white male in the trucking division, lost his job around the same time that Nelson did but was retained for a few extra months so that he could qualify for the Plant Closing Pension Option ("PCPO"), an opportunity she was not given. After supplemental briefing on this issue, the district court determined that this fact, too, was insufficient to establish race discrimination. We agree.

GE has established numerous, undisputed differences between Heroux and Nelson: (1) Heroux was in the trucking division of the plant, and Nelson was not; (2) Heroux's position was eliminated pursuant to a plant closing in that division, while Nelson was terminated pursuant to the plant's general RIF; (3) Heroux's holdover was negotiated by the Union whose members he supervised, and Nelson was not a member of the Union; (4) the Union negotiated the holdover on behalf of three other employees as well, one of whom was black; and finally (5) Heroux's holdover lasted only four months before he became eligible for the package, while Nelson would had to have been retained for an additional five years before becoming eligible for retirement. Thus, we find that the district court properly determined that Nelson and Heroux were not similarly situated and that Nelson presented no genuine issue of material fact tending to establish discrimination based upon GE's differential treatment of Nelson and Heroux.

■ Finally, Nelson alleges that one of her supervisor's referred to her as "Sunshine" and that such a term is direct evidence of race discrimination. Although calling someone "Sunshine" can have negative racial connotations, such a reference, standing alone, is insufficient to establish race discrimination as a matter of law. Accordingly, all of Nelson's discriminatory layoff claims are without merit.

## IV. Retaliation

■ Nelson asserts that GE unlawfully retaliated against her for her involvement in an incident that occurred in February 1995 involving her brother and another black employee, both of whom worked in the shipping division. In our recent decision in *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792–93 (6th Cir.2000), we modified the standard required to prove a claim of retaliation.

> A plaintiff must now prove that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Id.* at 792 (citing *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990) (outlining the previous standard for prima facie case of retaliation under Title VII)). Once the plaintiff establishes a prima facie case, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *See id.* at 792–93 (quoting *McDonnell Douglas,* 411 U.S. at 802). The plaintiff then must demonstrate "that the proffered reason was not the true reason for the employment decision." *See id.* at 793 (quoting *Burdine,* 450 U.S. at 256). The plaintiff bears the burden of persuasion throughout the entire process. *See id.*

In February 1995, Nelson's brother and another black employee were working overtime when Lou Ann Rogers, a Cross Dock Team Leader, asked them to pull orders for a shipment to a GE customer. The men refused Rogers's request and left the workplace. When Nelson learned that the men were going to be discharged for something she felt was a common practice, she wrote a letter to her supervisor and plant manager, Terry Woodworth, questioning how the matter was handled and implying that GE's actions were racially motivated. Ultimately, the men were not formally disciplined as they had not been apprised of the consequences of their actions. Nelson asserts that as a result of her complaints to management about the handling of this matter, Woodworth unlawfully retaliated against her in a March 1995 performance evaluation, and that GE also retaliated against her in her layoff.

### A. Retaliatory Performance Evaluation

 Nelson's March 1995 performance evaluation stated:

While Sharon has the operational knowledge and supervisory skills to be a successful contributing member of the team, her performance has been mixed. Sharon has difficulty operating in the management role which contributes to poor professional judgment. This was recently displayed with her unfounded claims and accusations regarding management's actions and motives. This type of approach, focusing on personalities rather than processes, undermines Sharon's ability to function as a key member of the management team. This behavior is unprofessional and builds rather than eliminates operational barriers.

The evaluation went on to list Nelson's various strengths and weaknesses, and it suggested that she continue in her present position if her performance improved.

The district court properly found Nelson's retaliation claim to be without merit. Whether or not Woodworth's opinion of the situation was apt. Nelson provides nothing to indicate that Woodworth's candid, though mixed, evaluation denied her opportunities so as to constitute an adverse action, or was otherwise retaliatory.

### B. Retaliatory Layoff

 GE has established, without dispute, that in July 1995 it offered Nelson a position in its Nela Park headquarters at the same base salary and benefits. Nelson rejected the offer without comment. Now Nelson complains that the Nela Park job offer was in fact adverse because it would have required her to commute 60 miles to work, she would not receive a shift differential in pay,[3] and she might have to travel.

---

**3.** Oddly, Nelson argues that transferring to a first-shift position would have been adverse as she would have lost the shift differential in pay, while at the same time, she asserts failure-to-promote claims based on the fact that

The district court properly held that a longer commute with the same job title, salary, and benefits is not an adverse employment action. *See Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1313 (E.D.Ky.1990) ("The clear trend of authority is to require that a transfer with no change in wages or benefits amount to a 'constructive discharge' to be actionable as an 'adverse employment action.'... A constructive discharge must be based on objective criteria that would create intolerable conditions that a reasonable person could not be expected to bear."). Nevertheless, even if we assume that Nelson suffered an adverse employment action, she has failed to show the requisite causal connection between her layoff her protected activity. *See Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation."); *Weaver v. Ohio State University,* 71 F.Supp.2d 789, 794 (S.D.Ohio 1998) ("[T]emporal proximity between the complaints and the employment action alone is usually not sufficient to support an inference of retaliatory discrimination in the absence of other evidence."). When asked what evidence existed linking her layoff to her protected activity, Nelson responded, "I don't have any evidence."

CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court.

she was overlooked for coveted first shift posi- tions.